# In the United States Court of Federal Claims

No. 14-423C

(Filed February 27, 2015)

* * * * * * * * * * * * * *  *
E&E ENTERPRISES GLOBAL,          *
INC.,                            *       Contracts; Wrongful Termination
                                 *       Claim; Allegations of Bad Faith
            *Plaintiff*,         *       Conduct by the Government;
                                 *       Whether the "Same Claim" Was
      v.                         *       Presented to the Contracting
                                 *       Officer.
THE UNITED STATES,               *
                                 *
            *Defendant.*         *
* * * * * * * * * * * * * *  *

     *A. Ari Ghosal*, Bethesda, MD, for plaintiff.

     *James W. Poirier*, United States Department of Justice, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Donald E. Kinner*, Assistant Director, Washington, DC, for defendant.

---

**OPINION**

---

**BUSH**, *Senior Judge*.

     Plaintiff E&E Enterprises Global, Inc. (E&E) filed its complaint on May 15, 2014.  The court has before it defendant's motion to dismiss this suit brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).  In the alternative, defendant requests that "the Court grant our motion to require E&E to file an amended complaint setting forth a

concise statement of any claim (including specific causation and damages elements pertinent to each particular claim) remaining after the Court has decided our motion to dismiss the complaint." Def.'s Mot. at 1-2.  Defendant's motion has been fully briefed, including sur-replies.  Oral argument was held December 10, 2014.  For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

### I.     General Nature of the Dispute

E&E "is an information technology . . . and broadband solutions provider offering managed and unmanaged services to government and commercial customers."  Compl. ¶ 3.  The Defense Information Technology Contracting Organization (DITCO) issued Solicitation HC1013-08-R-2004 on March 17, 2008.  *Id.* ¶ 5.  E&E responded to the solicitation on May 26, 2008.  *Id.* ¶ 16.  E&E was awarded the contract on August 22, 2008.  *Id.* ¶ 18.  The contract was terminated for the convenience of the government on March 12, 2009.  *Id.* ¶ 71.  Referencing a number of legal theories, E&E seeks "just compensation" related to its performance under the contract.  *Id.* ¶ 1.

### II.    Type of Work Required by the Contract

According to the complaint, the contract was for a "Broadband and Very Small Aperture Terminal (VSAT) network to be installed at Defense Commissary Agency (DeCA) sites in and outside of the continental United States (CONUS)."  Compl. ¶ 5.  Thus, DeCA is viewed as DITCO's client or customer for the contract services.[2]  *Id.* Ex. 6 at 5.  "The procurement was intended to augment the existing network and provide data communications to [DeCA] commissaries worldwide (approximately 174 CONUS and 86 OCONUS locations) and 10 OCONUS Central Distribution Centers."  *Id.* ¶ 6.

---

[1]/ The facts recited here are taken from the complaint and the parties' briefs and appear to be undisputed for the purpose of deciding defendant's motion.  Other than to determine the court's jurisdiction over this suit, the court makes no findings of fact in this opinion.

[2]/ Any general reference to the "agency" in this opinion is to DITCO, or DeCA, or both entities.

## III.   Contracting Vehicle

The solicitation was a "competitive 8(a) set-aside" for small businesses. Compl. ¶ 5.  E&E was, at all relevant times, a certified 8(a) small business.  *Id.* ¶ 16.  Under the 8(a) program, the Small Business Administration (SBA)

> contracts with federal agencies to provide goods and services, and subcontracts the actual performance of the work to disadvantaged businesses that have been certified by SBA as eligible for such contracts.

*Veridyne Corp. v. United States*, 758 F.3d 1371, 1374 (Fed. Cir. 2014).  The small business performing the contract services is generally referred to as the 8(a) contractor.  FAR 19.800(a), 48 C.F.R. § 19.800(a) (2014).[3]  Although mindful of the SBA's role in the contracting process, for purposes of this opinion the court refers to E&E as the contractor and refers to the agency as the contracting authority on the government side.  It should be noted that E&E also engaged a subcontractor, Hughes Network Systems (HNS), to support its performance of the contract services.  Compl. ¶ 22.

The contract, HC1013-08-D-0034, was a "firm fixed-price contract" with a one-year base period and three additional option years.[4]  Compl. Ex. 6 at 3.  Of particular interest for the dispute presented in this suit, the contract vehicle chosen by the agency was an Indefinite Delivery/Indefinite Quantity (IDIQ) contract.  *Id.* at 10.  Once the minimum purchase has been made in an IDIQ contract, which in this case was only "$5000 for the first pilot site," *id.* at 3, the agency is under no further obligation to purchase any remaining services contemplated by the contract.  *See, e.g.*, *Travel Centre v. Barram*, 236 F.3d 1316, 1319 (Fed. Cir. 2001) (stating that "under an IDIQ contract, the government is required to purchase the

---

[3]/  All citations to the Federal Acquisition Regulation (FAR) are to the current version of Title 48 of the Code of Federal Regulations.  The parties have not noted any material differences between the version of the FAR in effect at the time of the events pertinent to this dispute and the current version of the FAR.

[4]/  As noted by the agency in its responses to bidder questions, a fixed-price contract places the risk of loss on the contractor if the bid price is too low to cover the costs of performance.  Def.'s Mot. App. at 713.

minimum quantity stated in the contract, but when the government makes that purchase its legal obligation under the contract is satisfied" (citing *Mason v. United States*, 615 F.2d 1343, 1346 (Ct. Cl. 1980))).  The contract maximum in this case was $12.5 million dollars.  Compl. Ex. 6 at 3.

One of the characteristics of a typical IDIQ contract is that the contract is implemented by a series of task orders, which order specific amounts or items of work.  *See* Compl. Ex. 6 at 3 (referencing task orders).  The disputed contract discusses the term "task order" in numerous provisions.  In the "Ordering" section, the contractor is notified that:

> Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule.  Such orders may be issued from date of award throughout the contract base period, and can continue up through the third option year if exercised.

*Id.* at 10 (referencing FAR 52.216-18).  The same section further states that:

> All delivery orders or task orders are subject to the terms and conditions of this contract.  In the event of conflict between a delivery order or task order and this contract, the contract shall control.

*Id.*

The function (and importance) of task orders is described in another section of the contract, which states in relevant part:

> (a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule.  The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.
> (b) Delivery or performance shall be made only as authorized by orders issued in accordance with the

4

> Ordering clause.  The Contractor shall furnish to the
> Government, when and if ordered, the supplies or
> services specified in the Schedule up to and including
> the quantity designated in the Schedule as the
> "maximum".  The Government shall order at least the
> quantity of supplies or services designated in the
> Schedule as the "minimum".

Compl. Ex. 6 at 11 (referencing FAR 52.216-22).

The contract also contains a delivery schedule, which describes a sequence
of work related to particular pilot sites (*e.g.*, "Pilot Site 1 & 2"; "Pilot Site 3 & 4").
Compl. Ex. 6 at 3.  This delivery schedule is noted by the contract to be in
accordance with the Performance Work Statement (PWS) "and each task order."
*Id.*  Although the PWS was not attached to the complaint as a complete document,
the portion of the PWS discussing pilot sites states in relevant part that:

> The purpose of [Pilot Site 1] is to validate the
> operational capability in a production environment at a
> small commissary.

Def.'s Mot. App. at 37.  In addition, this section of the PWS states that:

> Successful Pilot Site testing and Government acceptance
> of the service at the Pilot Sites is required before general
> deployment of the Contractor solution.

*Id.*

It is undisputed that the agency issued fourteen task orders under the
contract and that the agency paid E&E an amount well over the minimum amount
of $5000.  It is also undisputed that the contract contained a standard "Changes"
clause, which states that "[c]hanges in the terms and conditions of this contract
may be made only by written agreement of the Parties."  Def.'s App. at 712
(referencing FAR 52.212-4(c)).  Finally, there is no dispute that the contract
contained a termination for convenience of the government clause, which states:

The Government reserves the right to terminate this contract, or any Part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

*Id.* (referencing FAR 52.212-4(l)). The contract was terminated pursuant to this clause approximately eight months into the base year. Compl. ¶ 33.

## IV.    Allegations of Bad Faith Conduct by the Agency

Factual allegations of bad faith conduct by the agency permeate the lengthy complaint. It is not necessary to catalogue each allegation that alludes to either bad faith, or a lack of good faith and fair dealing, on the part of the government. It suffices to note that plaintiff's allegations of bad faith address agency conduct at every stage of this procurement, from acquisition planning to close-out of the contract. *See* Compl. ¶¶ 15, 49, 52-53, 57, 59-60, 72-101, 107-09, 111, 113-14, 117-18, 122, 126, 128, 132-33, 136, 139-44, 146-48. Plaintiff's allegations condemning the conduct of the government are found both in the background facts section of the complaint, as well as in some of the four counts of the complaint. *Id.*

## V.    Termination for Convenience of the Government

6

According to the complaint, E&E's work on the first few pilot sites was satisfactory and accepted by DeCA. Compl. ¶¶ 43, 63-67. Nonetheless, "[b]efore the pilot testing fully concluded, DeCA decided not to pursue deployment of the system, allegedly because the designed system did not meet DeCA's business needs." *Id.* ¶ 71. E&E was notified that its contract was terminated for the convenience of the government on March 12, 2009. *Id.* Also on March 12, 2009, but six hours after E&E had been notified, the agency's contracting officer notified the SBA that the contract had been terminated. *Id.* ¶ 89, Ex. 39 at 1.

The termination for convenience notice was effective immediately. Compl. Ex. 39 at 3. E&E was instructed to cease work and to notify its subcontractors that the contract was terminated. *Id.* Additional instructions were included as to the transfer to the agency of title to contract inventories, as well as E&E's continuing liability for settlements with its subcontractors. *Id.* Ex. 39 at 4. Among other requirements, E&E was informed of its obligation to "[k]eep adequate records . . . showing the . . . [e]xtent of completion of performance on the effective date." *Id.* Ex. 39 at 3.

## VI.   Post-Termination Close-Out Negotiations

On April 15, 2009, E&E was notified that a terminating contracting officer (TCO) had been assigned to negotiate a settlement with E&E for its termination for convenience costs. Compl. ¶ 119, Ex. 52. These negotiations did not go smoothly. A new TCO was appointed on January 6, 2010. *See id.* ¶¶ 122, 124. E&E and the new TCO could not come to a settlement agreement as to the sum owed E&E for termination for convenience costs under the contract. *Id.* ¶ 129.

## VII.   Certified Claim

On November 15, 2012, E&E submitted a certified claim to the contracting officer for the agency. Although the certified claim was not attached to the complaint, the parties agree that the certified claim, supplemented by subsequent submissions to the contracting officer which clarified and corrected the certified claim, was attached to defendant's motion. *See* Def.'s Mot. App. Tabs 53-55. As discussed in more detail below, the certified claim contained two separate and distinct claims. The first claim was for termination for convenience costs, in the amount of $1,534,490.86, a figure which was later reduced by E&E to correct a

$20 math error, to $1,534,470.82.  Def.'s Mot. App. at 615, 707.  The second claim was for a wrongful, bad faith termination of the contract, in the amount of $2,273,022.70.[5]  *Id.* at 616.

The contracting officer denied the second claim, the wrongful termination breach of contract claim for $2,273,022.70, in its entirety.  Def.'s Mot. App. at 727-28.  As to the claim for $1,534,470.82 in termination for convenience settlement costs, the contracting officer only awarded $97,900.53.  *Id.* at 726.  The final decision of the contracting officer was dated May 16, 2013.  *Id.* at 708.

## VIII.  Proceedings before the Court

E&E filed its four-count complaint on May 15, 2014.  Each count requests the same amount of damages:  $3,296,543.18.  At oral argument, E&E's counsel explained that the increase in the amount of E&E's claim, from November 2012 to May 2014, could largely be attributed to cost figures that were revised as more data was included in the calculations.  Oral Argument Transcript (Tr.) at 28-29.  The legal theories relied upon by plaintiff, all sounding in breach of contract, are:

> breach of implied covenant of good faith and fair dealing [(Count I)], breach of contract based upon wrongful termination [(Count II)], implied-in-fact contract quantum meruit [(Count III)] and breach of contract express breach [of SBA advance notice provision] [(Count IV)].

Compl. ¶ 1.  Rather than file an answer, on July 28, 2014 the government moved to dismiss the complaint.

---

[5]/  The court notes that there does not seem to be any prohibition on a contractor presenting to the contracting officer a claim for termination for convenience costs as well as a claim for bad faith termination breach of contract damages.  *See, e.g.*, *T & M Distributors, Inc. v. United States*, 185 F.3d 1279, 1280 (Fed. Cir. 1999) (noting in that appeal that the plaintiff "submitted a termination [for convenience] settlement proposal and a breach of contract claim alleging wrongful termination"); *TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 342 n.5 (2013) (noting in that case that the plaintiff "submitted a [termination for convenience] settlement proposal for $92,949.09, reserving its right to bring a contractual claim regarding the . . . [bad faith] contract termination," a right it later exercised).

# DISCUSSION

## I.      Standards of Review

### A.      RCFC 12(b)(1)

In considering the issue of subject matter jurisdiction, this court must presume all undisputed factual allegations in the complaint to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).  However, a plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted).  If jurisdiction is found to be lacking, this court must dismiss the action.  RCFC 12(h)(3).

The Tucker Act delineates this court's jurisdiction.  28 U.S.C. § 1491 (2012).  That statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States . . . ."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) (citations omitted).  These include monetary claims against the federal government founded upon the Constitution, an act of Congress, a regulation promulgated by an executive department, an express or implied contract with the United States, or a claim for liquidated or unliquidated damages in cases not sounding in tort.  *Id.* (citing 28 U.S.C. § 1491(a)(1)).  The Tucker Act concurrently "waives the Government's sovereign immunity for those actions."  *Id.*

When the government has challenged the truth of jurisdictional facts in the complaint, the court must resolve the dispute.  *Reynolds*, 846 F.2d at 747 (citations omitted).  The court may inquire into evidence outside the pleadings to establish jurisdictional facts.  *Id.*; *Rogers v. United States*, 95 Fed. Cl. 513, 514-15 (2010) (citations omitted).  "Indeed, the court may, and often must, find facts on its own."  *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); *Rocovich v. United*

*States*, 933 F.2d 991, 993 (Fed. Cir. 1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed. Cir. 2002).

### B.    RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss brought under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236. The court must not mistake legal conclusions presented in a complaint, however, for factual allegations which are entitled to favorable inferences. *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted). If matters outside the pleadings are considered by the court, a motion to dismiss under RCFC 12(b)(6) must be converted to a motion for summary judgment under RCFC 56 and reviewed under that rule. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed. Cir. 1993) (holding that the standard for a motion for summary judgment applies when matters outside the pleadings are considered by a court disposing of a Rule 12(b)(6) motion).

The court must also inquire whether the complaint meets the plausibility standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (*Twombly*) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Iqbal*) (quoting *Twombly*, 550 U.S. at 570). Plausibility is a context-specific inquiry. *See, e.g.*, *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citation omitted).

## II.    Analysis

### A.    Jurisdiction

### 1.    Count II

One of the principal allegations in the complaint is that plaintiff is owed more money than it received for its contract because the agency wrongfully terminated the contract in bad faith. Compl. ¶¶ 146-48. The parties agree that this claim, although for a much lower amount, was previously submitted to the contracting officer in a certified claim, fulfilling a prerequisite for this court's jurisdiction over claims brought under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (2012) (CDA). Tr. at 19, 32-33. This allegation of bad faith wrongful termination is found in Count II of the complaint, and a largely indistinguishable claim, except for amount, is found in the certified claim presented to the contracting officer.[6] *Compare* Compl. ¶¶ 146-48, *with* Def.'s Mot. App. at 615-16, 681-84. Defendant concedes that this claim is within the court's jurisdiction. Tr. at 19. The court sees no jurisdictional impediment to its consideration of the claim found in Count II of the complaint.

### 2.    Counts I, III, and IV

The government questions, however, whether plaintiff's remaining claims, which are found in the other three counts of the complaint, were submitted to the contracting officer.[7] Def.'s Mot. at 14-15. The complaint succinctly summarizes the remaining counts: Count I ("breach of implied covenant of good faith and fair dealing"); Count III ("implied-in-fact contract quantum meruit"); and, Count IV ("breach of contract express breach [of requirement to give advance notice to the SBA of termination]"). Compl. ¶ 1. If these claims are not the "same claims" as those presented to the contracting officer in the certified claim, this court has no jurisdiction under the CDA to consider them. *See, e.g.*, *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) ("An action brought before the Court of Federal Claims under the CDA must be 'based on the same claim previously

---

[6]/ Neither party submitted the exhibits which accompanied the certified claim submitted to the contracting officer. Approximately sixty exhibits are referenced in the November 2012 certified claim. Def.'s Mot. App. Tab 53. Should the parties continue to dispute the effect of the certified claim on the viability of the claims presented in this suit, the exhibits attached to the certified claim would be essential for the court's analysis of plaintiff's claims.

[7]/ All counts in the complaint request the same dollar amount of damages and are best viewed as alternative legal theories of entitlement to relief.

presented to and denied by the contracting officer.'" (quoting *Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 417 (1987) and citing 41 U.S.C. § 605(a) (2000), now codified at 41 U.S.C. § 7103 (2012))).

### a.   Count I

Plaintiff asserts in Count I of the complaint that the government has breached the implied covenant of good faith and fair dealing as a result of its dealings with E&E related to this contract.  Compl. ¶¶ 132-44.  However, there is no formal claim in the certified claim submitted to the contracting officer which carries this label or sets forth this assertion.  That document presents two claims, labeled Alternative I and Alternative II.  Alternative I relies on the contract's termination for convenience clause for certain claimed costs, and Alternative II relies on breach of contract to support a wrongful, bad faith termination claim. Def.'s Mot. App. at 615-16, 660, 672.  The certified claim contains no Alternative III asserting breach of the implied covenant of good faith and fair dealing or, for that matter, any other claim.

Logically, one might assume that any claim for the government's breach of the contract's implied covenant of good faith and fair dealing, if not separately discussed, would have been associated with and included within the Alternative II claim, not the Alternative I claim.  A claim attacking the government's alleged lack of good faith and fair dealing, and a wrongful termination claim alleging bad faith, are often treated as related in concept, even if distinct in terms of burdens of proof.  *See, e.g.*, *TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 344-47 (2013) (examining the plaintiff's allegations of breach of the implied covenant for good faith and fair dealing, as well as its allegations of contract breach due to wrongful termination, in its analysis of a single claim presented by the plaintiff); *NCLN20, Inc. v. United States*, 99 Fed. Cl. 734, 751 (2011) (describing the plaintiff's factual allegations supporting claims related to wrongful termination and the implied duties of good faith and fair dealing as "often redundant").  In other words, lack of good faith is not that different from bad faith, at least conceptually.  *See, e.g.*, *Hubbard v. United States*, 480 F.3d 1327, 1332 (Fed. Cir. 2007) (noting the trial court's finding of bad faith government conduct which supported the plaintiff's claim for breach of the implied covenant of good faith and fair dealing); *Austin v. United States*, 118 Fed. Cl. 776, 789-90 (2014) (dismissing a claim for breach of the implied covenant of good faith and fair dealing because there was no evidence

of bad faith on the part of the government).  One might assume that a CDA plaintiff would put these similar legal theories, which share many operative facts, together in a single claim, if only two claims are presented to the contracting officer.  Nonetheless, E&E included its allegations of the agency's breach of the implied covenant of good faith and fair dealing within Alternative I (the termination for convenience costs claim), not within Alternative II (the wrongful, bad faith termination claim).  *See* Def.'s Mot. App. at 664-65.

Does this mean that the claim in Count I was not before the contracting officer?  Defendant makes this argument, although the government's analysis is cursory.[8]  Def.'s Mot. at 14 (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).  The cited portion of *Ellett*, however, merely describes the jurisdictional prerequisite that a CDA plaintiff first obtain a contracting officer's final decision on its claim before seeking relief in this court:

> Thus, for the court to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.

93 F.3d at 1541-42 (citations omitted).

To aid in determining this court's jurisdiction over CDA claims, the leading decisions of the United States Court of Appeals for the Federal Circuit which compare claims presented to a contracting officer with claims presented, in the first instance, to this court are *Scott Timber* and *Reliance Insurance Co. v. United States*, 931 F.2d 863 (Fed. Cir. 1991).[9]  *See Renda Marine, Inc. v. United States*,

---

[8] Defendant also suggests that Count I is, in truth, a claim founded upon an alleged contract implied-in-law.  Def.'s Mot. at 13-14.  Count I, however, contains numerous factual allegations and descriptions of legal duties which sound in breach of the contract's implied covenant of good faith and fair dealing.  *See, e.g.*, Compl. ¶¶ 132-33, 136, 139-44.  Defendant's attempt to characterize Count I as a claim outside of this court's jurisdiction must be rejected.

[9] A recent decision issued by the Federal Circuit is consistent with the court's application of relevant precedent in this opinion.  *See K-Con Bldg. Sys., Inc. v. United States*, No. 2014-5062, 2015 WL 570935, at *2-5 (Fed. Cir. Feb. 12, 2015).  Because this decision did not change existing precedent, the court did not rely on defendant's notice of supplemental authority,

71 Fed. Cl. 378, 390-92 (2006) (reconciling any perceived conflict between the statements of the law in these two precedential decisions).  In *Reliance*, jurisdiction was defeated in this court because the contractor "only submitted to the contracting officer claims for equitable adjustment to the contract[, not] a clear and unequivocal claim that the [agency] breached the contract or its duty of good faith," such as that presented in the complaint before this court.  931 F.2d at 866 (citations omitted).  *Reliance* thus stands for the general proposition that a claim presented to the contracting officer based on a particular legal theory cannot support a claim in this court that is based on an entirely dissimilar theory.  *See Renda*, 71 Fed. Cl. at 391 ("Absent the same – or at least a similar – underlying legal theory for relief submitted to the [contracting officer], the court in *Reliance* declined to extend its jurisdiction as if a 'claim' for breach of contract or breach of the duty of good faith had been raised before the [contracting officer].").  *Reliance* does not, however, fully answer the question that is posed here:  Does an allegation of breach of the implied covenant for good faith and fair dealing, included within the body of a claim for termination for convenience costs, suffice to create jurisdiction for a claim for breach of the implied covenant for good faith and fair dealing in this court?

 *Scott Timber* is somewhat more helpful in this circumstance.  The Federal Circuit allowed for some variance between the "exact language and structure" of the claim before the contracting officer and the claims before this court in its jurisdictional analysis:

>  [T]he United States contends that Scott has raised new
> claims in this action that were not previously presented
> to the CO under the requirements of the CDA.
> Specifically, the United States argues that Scott's
> original CDA claims questioned broadly the authority of
> the Forest Service to suspend the . . . contracts and the
> reasonableness of the duration of those suspensions.
> According to the United States, Scott cannot raise new
> claims, such as the clause . . . warranty issue, the

filed February 17, 2015, citing *K-Con* and presenting additional argument, for its rulings in this opinion.  Briefing of defendant's motion, including sur-replies, was closed on November 21, 2014 pursuant to the court's Order of November 10, 2014.

objections to Forest Service's preparation and administration of the contracts, and the claims for reimbursement provided under contract terms [in the Court of Federal Claims]. The United States asserts that those claims were not "clearly and unequivocally" presented to the CO. *See Reliance Ins. Co. v. United States*, 931 F.2d 863, 866 (Fed. Cir. 1991).

An action brought before the Court of Federal Claims under the CDA must be "based on the same claim previously presented to and denied by the contracting officer." *Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 417 (1987); 41 U.S.C. § 605(a) (2000). This standard, however, does not require ri[gi]d adherence to the exact language or structure of the original administrative CDA claim. The Court of Federal Claims correctly found that it had jurisdiction over Scott's claims in this case, because they arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery. *See Scott I*, 40 Fed. Cl. at 499-500; *Scott III*, slip op. at 51-52. This court "know[s] of no requirement in the [CDA] that a 'claim' must be submitted in any particular form or use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). In this case, Scott gave the CO clear notice of a purported breach of contract based on the prolonged and allegedly unauthorized suspensions. Moreover Scott sought from the CO the same remedy sought from the trial court, namely consequential damages for the alleged breach. Scott may have posed slightly different legal theories for the breach, but Scott's claim is essentially the same as presented to the CO. Thus, Scott's claims in this case

15

> would not "subvert the statutory purpose of requiring
> contractors first to submit their claims to the [CO]" to
> allow the CO to receive and pass judgment on the
> contractor's entire claim. *Croman v. United States*, 44
> Fed. Cl. 796, 801-02 (1999). Accordingly, this court
> affirms the Court of Federal Claims' finding of
> jurisdiction.

333 F.3d at 1365-66. Where, as here, a contracting officer had notice of "the
contractor's entire claim," *Scott Timber* holds that the court should not rest its
jurisdictional analysis on the format of the claim submitted to the contracting
officer. For this reason, the court finds that the claim in Count I was before the
contracting officer, Def.'s Mot. App. at 664-65, and this court's jurisdiction over
Count I is established.

### b.    Count III

One of the claims in the complaint is entirely new and unrelated to any
claim, or even any passing reference to a legal theory, in the certified claim
presented to the contracting officer. This claim, found in Count III of the
complaint, alleges a breach of an implied-in-fact contract to pay plaintiff for "work
performed but not [ordered] in the Task Orders" issued under this contract.
Compl. ¶ 151. Plaintiff seeks payment in *quantum meruit* to compensate E&E for
"work and services [received] from Plaintiff . . . for which Plaintiff has not been
compensated." *Id.* ¶ 155. Because the contracting officer was never presented
with a claim based upon an implied-in-fact contract, or a claim requesting payment
in *quantum meruit* for "unjust enrich[ment]" of the government, *id.*, the court lacks
jurisdiction over the claim presented in Count III of the complaint, as explained
below.

Certainly, under *Reliance*, a claim based on an implied-in-fact contract is
too dissimilar to E&E's claims before the contracting officer, which were based
either upon specific contract terms or breaches of a formal, executed contract.
What is missing in the certified claim E&E presented to the contracting officer is
any allusion to an implied-in-fact contract; thus, the contracting officer had no
"clear and unequivocal" statement from E&E that such an implied contract had
been formed. 931 F.2d at 866. This glaring omission, under *Reliance*, defeats

16

jurisdiction for Count III in this court.

Even under *Scott Timber*, where a certain latitude in the expression of legal theories was permitted, there is no indication that the Federal Circuit intended to embrace a broad openness to *any and all* subsequent legal theories in this court based on the submission of one initial claim presented to the contracting officer. *See* 333 F.3d at 1365 (requiring that the claims submitted to the contracting officer and this court be the same or only "slightly different" in legal theory, that the claims arise from the same operative facts, and that the claims seek essentially the same relief); *Renda*, 71 Fed. Cl. at 392 (following *Reliance* and *Scott Timber* to dismiss a claim which was "sufficiently distinct" from the one before the contracting officer to defeat CDA jurisdiction in this court). Only a radical change in precedent could permit Count III of E&E's complaint to be considered to be the same claim as any claim before the contracting officer. *Scott Timber* did not, however, even approach an overruling of *Reliance* and other prior Federal Circuit decisions applying the rule stated in *Reliance*, nor could it have done so.[10] *George E. Warren Corp. v. United States*, 341 F.3d 1348, 1351-52 (Fed. Cir. 2003) (citing *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988), for the proposition that later panels are bound by earlier panel decisions unless those decisions are overruled *en banc*). Although under *Scott Timber* CDA claims founded on "slightly different" legal theories are not necessarily new claims before this court, distinctly different claims are another matter.

Count III, it must be noted, asserts the breach of a contract which was not even alleged to have existed in the claims submitted to the contracting officer.[11] A

---

[10]/ The Federal Circuit's most recent decision on this issue confirms that the rule stated in *Scott Timber* is not broad enough to permit distinct legal claims in this court founded on dissimilar legal claims before the contracting officer. *See K-Con*, 2015 WL 570935, at *3 (stating that presenting a "materially different factual or legal theory (*e.g.*, breach of contract for not constructing a building on time versus breach of contract for constructing with the wrong materials) [in this court] does create a different claim [from the one submitted to the contracting officer]" (citing *Santa Fe Eng'rs, Inc. v. United States*, 818 F.2d 856, 858-60 (Fed. Cir. 1987))).

[11]/ In plaintiff's sur-reply, E&E concedes that it did not use "the legal phrase 'implied-in-fact contract'" in its certified claim. Pl.'s Sur-Reply at 5. Although the court agrees with plaintiff that E&E's certified claim, in its numerous factual allegations, might theoretically contain an implicit allegation that the government benefitted from E&E's performance of contract work beyond the scope of any task orders issued by the agency, *id.*, this is not the same

recent decision by this court conducted the analysis required by *Scott Timber* and *Reliance* and found that when a claim requires additional operative facts to be resolved in this court, it cannot be considered to be the same claim as the claim before the contracting officer. *See Affiliated Constr. Grp., Inc. v. United States*, 115 Fed. Cl. 607, 614 (2014) (citing *Scott Timber*, 333 F.3d at 1365, and declining CDA jurisdiction over a claim "predicated on different operative facts" and legal theories different from those supporting the claim before the contracting officer). In another recent decision by this court, the court opined:

> When the administrative claim [before the contracting officer] focuses on one theory of relief and does not allege facts sufficient to satisfy any of the elements of the theory of relief asserted on appeal [in this court], it is unlikely that the appeal has arisen from the same operative facts. Such is the case here.

*Simulation Tech., LLC v. United States*, 103 Fed. Cl. 105, 110 (2012). E&E's implied-in-fact contract claim, which is a claim for payment for work beyond the scope of agency task orders, would require the examination of numerous operative facts that are not required for the resolution of any of E&E's other claims presented to the contracting officer. Further, sufficient facts to support formation of an implied-in-fact contract were not alleged in E&E's certified claim submitted to the contracting officer. Following *Reliance* and *Scott Timber*, the claim in Count III of the complaint is beyond this court's jurisdiction under the CDA.

### c.    Count IV

In Count IV of the complaint, E&E asserts that the government "did not terminate this Contract consistent with the Contract terms pertinent to Section 8(a) awardees." Compl. ¶ 157. In support of what plaintiff alleges to be a material and express breach of the contract, *id.* ¶¶ 160-61, E&E contends that the agency failed to "'give advance notice to the Small Business Administration before it issue[d] a

---

as a claim alleging that the parties had a meeting of the minds as to an implied contract supplementing the executed contract. Thus, the contracting officer was never presented with, and never considered, an implied-in-fact contract claim such as the one contained in Count III of the complaint.

final notice terminating the right of E&E, as the subcontractor, to proceed with further performance, either in whole or in part, under the contract,'" *id.* ¶ 158 (quoting FAR 52.219-17 as set forth in the contract) (alteration in original); *see also* Compl. Ex. 6 at 14. This factual allegation is also found in the certified claim presented to the contracting officer, Def.'s Mot. App. at 646-49, but the advance notice provision is not mentioned within either Alternative I (the termination for convenience costs claim) or Alternative II (the wrongful, bad faith termination claim), *id.* at 660-84. If the court were to categorize this factual allegation (of an express breach of the contract term regarding advance notice to the SBA of a contract termination) within the context of either Alternative I or Alternative II, it appears to belong within the bad faith wrongful termination claim in Alternative II. *See id.* at 647 (alleging that the agency's failure to conform with the notice provision set forth in the contract was "deliberate and intended to harm E&E").

Defendant asserts that Count IV of the complaint, asserting breach of the contract's notice provision, was not before the contracting officer. Def.'s Mot. at 15. Again, defendant's contention in this regard is conclusory. The analysis mandated by *Reliance* and *Scott Timber*, however, requires that the court consider whether essentially the same claim was first presented to the contracting officer. *See supra*. In the court's view, Count IV meets this standard.

There is no substantive variance between the allegations of breach of the contract's advance notice provisions in the certified claim before the contracting officer, and the same allegations in Count IV in the complaint. Further, although Count IV presents a legal theory that was not clearly presented to the contracting officer, *i.e.*, E&E's right to recover for breach of a material term of the contract, that claim is similar in nature to the bad faith, wrongful termination contract breach claim presented in the certified claim's Alternative II; relies on operative facts that would also be relevant to prove bad faith conduct on the part of the agency; and requests the same type of relief as does the contract breach claim in Alternative II. Under *Reliance* and *Scott Timber*, Count IV contains a claim that was presented to the contracting officer and therefore jurisdiction lies for Count IV of the complaint.

### 3.    No Appeal of the Contracting Officer's Final Decision on Alternative I, the Termination for Convenience Costs Claim

Finally, defendant argues that this court lacks jurisdiction over any claim plaintiff might assert which is derivative of the certified claim's Alternative I, the termination for convenience costs claim that was partially granted but mostly denied by the contracting officer. *See* Def.'s Mot. App. Tab 56 (awarding $97,900.53, including interest, on a claim for $1,534,470.82). According to the government, E&E's complaint fails to challenge the contracting officer's ruling on Alternative I, and thus any attempt by plaintiff to resurrect Alternative I in subsequent proceedings before this court must fail for the simple reason that the statutory deadline for appealing the decision on Alternative I has now passed. Def.'s Mot. at 7 (citing 41 U.S.C. § 7103(g)); Def.'s Reply at 2-4; Def.'s Sur-Reply at 1-3, 5. In a related argument, defendant contends that recovery under any of the counts of the complaint, to the degree that plaintiff's recovery rests on categories of costs that were or could have been included in Alternative I (a claim that was not appealed in the complaint), is now foreclosed because the contracting officer's ruling on such costs is now final. Def.'s Reply at 8-9; Def.'s Sur-Reply at 1-5; Tr. at 6, 55-56, 58.

The court agrees with the government's analysis, at least in part. Although plaintiff attempts to construe the certified claim presented to the contracting officer as one, unified claim, Tr. at 32-33, 59, that *ipse dixit* litigation position is neither supported by the record nor justified by applicable caselaw. On its face, the certified claim contains two separate claims, supported by fundamentally different legal theories and requesting different amounts of money. *See* Def.'s Mot. App. at 615-16 (distinguishing "Alternative I – Reimbursement Pursuant to the Commercial Termination for Convenience Clause (FAR 52.212-[4](l))," requesting $1,534,490.86, from "Alternative II – Damages Arising from the Government's Breach of Contract," requesting $2,273,022.70). Defendant correctly relies on *Case, Inc. v. United States*, 88 F.3d 1004, 1010-11 (Fed. Cir. 1996), for the rule that divisible parts of a certified claim which seek different amounts of money are separate claims. Def.'s Reply at 4. Under *Case*, Alternative I and Alternative II are separate and divisible claims in E&E's certified claim. Plaintiff cites no authority to refute this characterization of its certified claim.

The contracting officer then rendered a decision on each of these separate claims, totally denying Alternative II and granting less than ten percent of the amount requested in Alternative I. Def.'s Mot. App. at 726-28. Thus, the

undisputed documents in the record show that the certified claim presented to the contracting officer contained two claims, and that the contracting officer's decision on Alternative I was final on or about May 16, 2013. *Id.* at 708.  Plaintiff filed suit in this court on May 15, 2014, but the complaint contains no count or claim founded on E&E's rights under the termination for convenience clause of the contract or FAR 52.212-4(l).

Similarly, even after defendant raised the issue of plaintiff's failure to appeal the contracting officer's final decision on Alternative I, plaintiff's opposition brief made no mention of a claim before this court founded on the termination for convenience clause of the contract.  This pattern continued in plaintiff's sur-reply brief.  Even after an ostensible review of defendant's reply brief and defendant's sur-reply brief, where defendant reiterated its position that the complaint before this court is devoid of a claim for termination for convenience costs, plaintiff's sur-reply made no mention of a claim before this court founded on the termination for convenience clause of the contract or FAR 52.212-4(l).  Not until oral argument did plaintiff's counsel attempt to convince the court that such a claim could be found in the complaint.  This argument, not raised until oral argument, is not properly before the court.  *See Arakaki v. United States*, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete." (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002); *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 450, 467 (1999))).

Even if plaintiff's argument were properly before the court, it would be unavailing.  At oral argument, the court asked plaintiff's counsel to identify the language in the complaint which appealed the contracting officer's decision on Alternative I, the termination for convenience costs claim.  Tr. at 33-38.  Among a variety of responses to this question, plaintiff's counsel indicated that such a claim might be found "over the four counts," or might be found in the overall amount requested in damages for this suit.  *Id.* at 33-34.

When the court inquired where, specifically, within the one hundred sixty-one paragraphs of the complaint a claim for termination for convenience costs beyond those awarded could be found, plaintiff's counsel responded that the court should look at the factual allegations regarding the termination of the contract beginning with paragraph one hundred two and continuing through paragraph one

hundred thirty.  Tr. at 37.  Counsel also noted that paragraph one hundred twenty-seven addressed termination for convenience costs that had already been paid to E&E by the agency.  *Id.* at 38.

The court noted, and plaintiff's counsel conceded, that within that cited paragraph no "claim . . . for additional termination for convenience costs" could be identified.  *Id.*  The court has duly examined the entire complaint.  There is no indication that E&E appealed the contracting officer's decision as to the amount owed to plaintiff under the contract's termination for convenience clause.  Instead, there is a series of allegations of contract breach, with accompanying legal theories, and an unexplained request for $3,296,543.18, the amount of damages requested for each of the four counts in the complaint.  The court concludes that there is no appeal of the contracting officer's final decision on the certified claim's Alternative I, the termination for convenience costs claim, within the complaint.

The court declines to decide, at this point, whether any of the damages asserted by plaintiff in this suit are unavailable based upon the finality of the contracting officer's decision on termination for convenience costs.  First, plaintiff has thus far only offered broad stroke explanations as to its claimed breach damages and their proper categorization.  Second, although certain types of damages might properly be the focus of challenges brought under RCFC 12(b)(6) or RCFC 56, this court's jurisdiction over Counts I, II and IV does not depend upon any specific classification or apportionment of the damages associated with each of these counts in the complaint.

### 4.    Summary of Jurisdictional Rulings

The court finds that it has jurisdiction to consider Counts I, II and IV of the complaint.  The implied-in-fact contract claim in Count III, however, was not submitted to the contracting officer and must be dismissed for lack of subject matter jurisdiction.  Further, to the extent that the claims found in Counts I and IV must be categorized as aligning with either Alternative I or Alternative II in the certified claim presented to the contracting officer, both of these claims are, by their nature, contract breach claims based at least in part on allegations of bad faith conduct, and are more closely connected to Alternative II (the wrongful, bad faith termination claim), than to Alternative I (the termination for convenience costs claim).  Finally, there is no claim for termination for convenience costs in the

22

complaint – thus, pursuant to 41 U.S.C. § 7103(g), the court lacks jurisdiction for any such claim in this litigation.  The court now turns to defendant's challenge to the three remaining counts of the complaint under RCFC 12(b)(6).[12]

## B.    The Government's RCFC 12(b)(6) Challenges to the Complaint

### 1.    Counts I and II

Defendant raises several RCFC 12(b)(6) challenges to Counts I and II, although these arguments are presented in a cursory manner.[13]  First, the government asserts that the identification of damages in the complaint is insufficiently clear, rendering plaintiff's claims implausible.  Second, the government asserts that the formula used to calculate the damages for wrongful termination in the certified claim before the contracting officer, and, presumably, the same damages formula alleged to support the claims in Count I and in Count II here, cannot support a valid CDA claim.  Third, the government argues that even if Count I could be read to state a claim relying on a constructive change to the contract, E&E has failed to clearly and meaningfully plead the elements of such a claim.  Fourth, the government argues that the contracting officer's discretion in this type of contracting vehicle is so great that no allegation of abuse of discretion could support recovery under either Count I or Count II.  The court addresses each

---

[12]/ The government challenged all four counts of the complaint pursuant to RCFC 12(b)(6).  Because the court lacks jurisdiction over Count III, the court need not address, at any length, the question of whether Count III also fails to state a claim upon which relief may be granted.  The court does agree, however, with defendant's arguments and citations to caselaw which indicate that plaintiff's claim founded on the existence of an implied-in-fact contract covering the same subject as its express, executed contract is implausible.  *See, e.g.*, *Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990) ("The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." (citing *ITT Fed. Support Servs. v. United States*, 531 F.2d 522, 528 n.12 (Ct. Cl. 1976))).  Plaintiff did not rebut these arguments or present conflicting authority, because its briefs do not address Count III in terms of RCFC 12(b)(6).  Thus, even if the court possessed jurisdiction over Count III of the complaint, it would necessarily be dismissed for failure to state a claim under RCFC 12(b)(6).

[13]/ The court observes that its consideration of defendant's RCFC 12(b)(6) arguments does not rely on any of the exhibits attached to the parties' briefs.  *See* RCFC 12(d).

of these contentions in turn.[14]

### a.    Pleading Requirement for Damages

Defendant attempts to establish a pleading standard for a plausible identification of the damages sought in a CDA claim.  *See* Def.'s Mot. at 19-20; Def.'s Reply at 7-8; Def.'s Sur-Reply at 5; Tr. at 4, 17, 20.  The court is not persuaded that defendant's proposed standard is supported by the cited authorities. First, FAR 2.101, Def.'s Sur-Reply at 5, does not appear to require that a CDA claim contain any further precision regarding damages other than a statement of a sum certain owed to the contractor:

> *Claim* means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

FAR 2.101.  The complaint here meets this standard.

Second, *Boyajian v. United States*, 423 F.2d 1231 (Ct. Cl. 1970), the case repeatedly cited by defendant for its proposed pleading standard, *see* Def.'s Mot. at 18-19, 24; Def.'s Reply at 7; Def.'s Sur-Reply at 5; Tr. at 17, is a post-trial opinion, not an opinion resolving a motion to dismiss for failure to state a claim upon which relief may be granted.  *See Boyajian*, 423 F.2d at 1232 (stating that "trial proceedings were conducted with respect to the remaining five [claims]" and proceeding to examine whether the plaintiff had proved those claims).  Thus, the pronouncements of the Court of Claims in *Boyajian* regarding the damages component of a CDA claim address the burden of proving those damages. *Boyajian* cannot be read to impose a pleading standard for a plausible description

---

[14]/  Defendant's reliance on the doctrine of accord and satisfaction in its motion to dismiss weakened by the time the parties presented oral argument.  *See* Tr. at 6 (argument from government counsel stating that "it's not a question of accord and satisfaction, although I mentioned that in some of my papers, it's a question of statutory bar").  Judging the sufficiency of plaintiff's claims by the fair inferences afforded assertions in the complaint and by the content of the documents attached thereto, plaintiff's claims survive any challenge brought under RCFC 12(b)(6) which relies on the doctrine of accord and satisfaction.

of CDA damages in a complaint, because this topic is nowhere addressed in that opinion.  The court finds *Boyajian* to be inapposite to the inquiry required by RCFC 12(b)(6).

Third, the non-CDA cases relied upon by defendant do not support the proposed pleading standard.  Defendant's general citations to cases setting forth the Rule 12(b)(6) standard under *Twombly* and *Iqbal* shed no light on defendant's proposed requirement that damages in a CDA claim be specified beyond the identification of a sum certain.  *See* Def.'s Mot. at 20; Def.'s Sur-Reply at 5.  As noted by the Supreme Court, plausibility is a context-specific inquiry.  *Iqbal*, 556 U.S. at 679.  Non-CDA cases do not meaningfully address the sufficiency of the damages pled in CDA claims.

Fourth, the cases cited by defendant discussing contractor claims and damages, *see* Def.'s Reply at 7-8, are inapposite.  In *Willems Industries, Inc. v. United States*, 295 F.2d 822, 827, 832 (Ct. Cl. 1961), the Court of Claims looked at "the evidence in the record" to discover whether each party had discharged "its burden of proving the fact of loss" for its claim or counterclaim.  *Willems* therefore supplies insight as to the burden of proof for CDA claims, not a pleading standard.  Another decision cited by defendant, *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759 (Fed. Cir. 1987), is, like *Boyajian*, a case describing post-trial burdens of proof.  Finally, *Propellex Corp. v. Brownlee*, 342 F.3d 1335, 1338 (Fed. Cir. 2003), similarly discusses burdens of proof in a post-hearing setting.  None of these cases establishes a pleading standard that is relevant to the government's RCFC 12(b)(6) motion.

The court concludes that defendant has failed to muster adequate authority for its proposed pleading standard for the damages component of CDA claims.  The counts of the complaint have not been shown to be impermissibly vague regarding the monetary relief sought.  Nor can the court conclude, relying only on the complaint and the documents attached thereto, that the sum sought in either Count I or Count II is not plausible.  The court now turns to another RCFC 12(b)(6) argument raised by the government.

### b.   Percentage of Contract Value Damages Claim

Referring back to the November 2012 certified claim before the contracting

25

officer, defendant argues that any claim in the complaint based on Alternative II (the wrongful, bad faith termination claim) would likewise contain a damages formula that requests sixty-seven percent of the maximum possible contract amount. Def.'s Mot. at 20-21; Def.'s Reply at 8-9; Def.'s Sur-Reply at 2-5; Tr. at 56-58. Defendant argues that such a damages formula is speculative and not grounded in incurred costs, and that such a formula cannot provide for a contractor's recovery on a CDA claim. In this case, however, the court need not consider whether a contractor may recover on such a damages formula, because it is not evident that the damages requested for Count I and Count II are based on such a formula.

There is no mention of a damages formula in the complaint. In plaintiff's sur-reply, E&E asserts that "Defendant's unsupported presumption that 'it is reasonable to assume that . . . the damages in the complaint were *not* based upon any incurred cost' is speculative and incorrect." Pl.'s Sur-Reply at 7 (citing Def.'s Reply at 8). At oral argument, although plaintiff's counsel was not altogether clear on this point, it appears that at least some of the damages claimed in the complaint may be for incurred costs. Tr. at 28-35. Further, plaintiff's counsel did not concede that a damages formula had been used to derive the sum certain set forth in each of the claims in the complaint.

Affording all reasonable inferences to the complaint, the court cannot conclude that Count I or Count II should be dismissed because these claims necessarily rely on a speculative damages formula. The court notes, too, that in arguing this issue the parties have relied on materials outside the pleadings. *See, e.g.*, Def.'s Mot. at 20-21 (citing Def.'s Mot. App. at 684); Pl.'s Sur-Reply at 6 (citing Pl.'s Opp. Ex. 1 at 74). It is not proper to rely on such materials to decide a motion brought under RCFC 12(b)(6), without first converting the motion to dismiss to a motion for summary judgment. *See* RCFC 12(d). The court does not have before it substantive argument based on the summary judgment standard; thus, materials outside the pleadings are not appropriately considered at this time. Count I and Count II therefore survive defendant's RCFC 12(b)(6) challenge founded on the presumption that plaintiff used a speculative damages formula in the complaint.

### c.   Constructive Change Claim Pleading Requirements

26

Defendant argues that "[c]ertain portions of Count One might be construed as allegations related to a constructive change claim." Def.'s Mot. at 18 (citing Compl. ¶¶ 57, 136, 142). The court agrees with defendant that these allegations in the complaint are not unlike the allegations used to support an equitable adjustment claim for constructive changes to a contract. Defendant goes further, however, and argues that because "E&E has failed to plead all elements of its constructive change claim in a meaningful way, . . . the claim [in Count I] should be dismissed for failure to state a claim upon which relief may be granted." *Id.* The court cannot agree.

First, plaintiff has clearly pled a breach of contract claim in Count I that alleges a breach by the government of the implied covenant of good faith and fair dealing in its dealings with E&E related to this contract. On its face, Count I is not a claim for constructive change of the contract requirements. Further, it is not clear to the court that the true nature of Count I is that of a claim for constructive changes to the contract.

Within Count I is an allegation that the agency "interfer[ed] with E&E's ability to provide the turnkey solution required under the Contract and its reasonable expectations as to compensation and goodwill emanating therefrom." Compl. ¶ 132. Another allegation states that the agency "did not issue [contract line item numbers] pursuant to the agreed-upon delivery sequence." *Id.* ¶ 133. Yet another allegation states that "maintenance was ordered before there was anything in place to maintain." *Id.* ¶ 137. The government is also accused of a "lack of diligence in issuing necessary task orders," of "fail[ing] to cooperate with Plaintiff," and of "not fully disclosing prior contract acquisition history." *Id.* ¶¶ 139-41. These allegations are not necessarily restricted to a constructive change claim, and could potentially support a breach claim founded on the implied covenant of good faith and fair dealing.

Thus, the court is not convinced that Count I should be held to a pleading standard which requires that all of the elements of a constructive change claim be pled in the complaint in order to avoid dismissal. Further, as the court noted *supra*, there is a logical connection between the facts required to prove a breach of the implied covenant of good faith and fair dealing, and the facts required to support a wrongful, bad faith termination of a government contract. To the extent that the allegations and specific claims in Count I and Count II are merely facets of

the same overall claim for damages related to a wrongful termination, Count I should not be dismissed merely because it possibly contains an imperfectly pled constructive change claim.  For these reasons, defendant's RCFC 12(b)(6) challenge to Count I on the grounds that plaintiff failed to adequately plead a constructive change claim must be rejected.

> ### d.   Claim for Breach of the Duty of Good Faith and Fair Dealing Is Not Foreclosed by the Nature of the Contract or by the Agency's Broad Discretion

Finally, defendant argues Count I should be dismissed because a "party cannot breach the implied duty of good faith and fair dealing by taking actions permitted by the contract." Def.'s Mot. at 16 (citations omitted).  To give a specific example of this premise, the government contends that "[i]n this case, the contract permitted the contracting officer to issue these 14 task orders, and permitted the contracting officer to issue *only* these 14 task orders." *Id.* (emphasis added).  Further, defendant notes that the agency is permitted to assign a significant amount of risk to the contractor. *See id.* at 17-18 (noting that contracting officers have considerable discretion in structuring contracts, and citing numerous authorities for this proposition).  The court cannot agree with defendant that the contract vehicle chosen here by the agency, or its discretion in assigning risk to contractors, guaranteed that no claim for breach of the implied duty of good faith and fair dealing could possibly succeed in this court.

The contract at issue in this suit is an IDIQ contract.  The court is aware of at least one breach claim founded on the implied duty of good faith and fair dealing which survived a motion to dismiss brought under RCFC 12(b)(6), even though the contract in question in that case was an IDIQ contract. *Digital Techs., Inc. v. United States*, 89 Fed. Cl. 711, 717, 735 (2009).  Further, no fundamental incompatibility between a breach claim founded on the implied duty of good faith and fair dealing and an IDIQ contract can be discerned in the cases cited by defendant.

In one of the cases cited in the government's motion, the Federal Circuit states that *all* types of contracts include the implied duty of good faith and fair dealing:

28

> Implied in every contract is a duty of good faith and fair
> dealing that requires a party to refrain from interfering
> with another party's performance or from acting to
> destroy another party's reasonable expectations
> regarding the fruits of the contract. *Centex Corp. v.
> United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005).
> For example, this implied covenant guarantees that the
> government will not eliminate or rescind contractual
> benefits through action that is specifically designed to
> reappropriate the benefits and thereby abrogate the
> government's obligations under the contract. *Precision
> Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829
> (Fed. Cir. 2010).

*Bell/Heery v. United States*, 739 F.3d 1324, 1334-35 (Fed. Cir. 2014). Thus,
simply because an IDIQ contract permits the agency to issue some task orders and
to not issue others does not mean that the government's conduct in administering
the IDIQ contract is beyond judicial review. The court cannot therefore agree with
defendant that in this case, "as a matter of law, the implied duty of good faith and
fair dealing in the contract was not breached." Def.'s Mot. at 16 (citing
*Bell/Heery*, 739 F.3d at 1335, and other cases).

Defendant also argues that Count I includes a claim for contract reformation
which cannot succeed because the allocation of risk in this contract was within the
contractor's broad discretion. *Id.* at 17 (citing Compl. ¶¶ 133, 139-40). The court
notes, however, that the term "contract reformation" is nowhere to be found in the
complaint, and that the paragraphs cited by the government do not request that the
court reform the contract. Although the factual allegations provided at the
beginning of the complaint mention the extreme risk allocated to E&E in the
disputed contract, it does not necessarily follow that Count I of the complaint
requests a reformation of the contract. Because Count I alleges breach of the
implied duty of good faith and fair dealing and does not specifically request
contract reformation, this claim does not improperly challenge the agency's
discretion in a manner foreclosed by the precedent cited by defendant. *See* Def.'s
Mot. at 17-18.

It may be that plaintiff will have a difficult time proving that the agency

breached the implied covenant of good faith and fair dealing in this IDIQ contract. Under RCFC 12(b)(6), however, that is not the appropriate focus at this point. The court must not attempt to try plaintiff's case on the basis of the allegations in the complaint. *See, e.g.*, *Petro Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 71 (2009) (cautioning against the government's attempt "to collapse discovery, summary judgment and trial into the pleading stages of a case" (citing *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555)). Instead, the allegations of the complaint are tested for plausibility. *Iqbal*, 556 U.S. at 678. Count I, especially when this count is considered to be a complement to Count II of the complaint, states a plausible claim for breach of the government's implied duty of good faith and fair dealing.

### 2.    Count IV

Defendant argues that Count IV fails to state a claim upon which relief may be granted because no plausible claim for $3,296,543.18 could be founded on the agency's failure to timely notify the SBA of the termination of E&E's contract. Def.'s Mot. at 23. The court must agree. First, the factual scenario here is that the agency notified the SBA six hours after notifying E&E that its contract was being terminated for the convenience of the government. Compl. Ex. 39 at 1. Thus, the pertinent question is whether the government could plausibly owe E&E $3,296,543.18 because of a six-hour delay in contravention of the advance notice provision in the contract, a notice provision provided in FAR 52.219-17. At oral argument, defendant's counsel characterized Count IV as "kind of a silly claim." Tr. at 19.

Plaintiff entirely fails to rebut defendant's RCFC 12(b)(6) challenge to Count IV. The topic is not addressed in either plaintiff's opposition brief or in its sur-reply brief.[15] Even at oral argument, plaintiff never addressed the plausibility of the claim in Count IV. Rather, counsel explained that the failure to timely notify the SBA was "just sort of added fuel to the fire," with counsel's reference to "the fire" alluding to an alleged pattern of bad faith conduct of the agency in the award, administration and termination of the contract. Tr. at 46.

---

[15]/  E&E's only argument concerning Count IV is contained in plaintiff's sur-reply brief, and this argument addresses jurisdiction, not the plausibility of the claim in Count IV. *See* Pl.'s Sur-Reply at 5-6.

Although plaintiff has not buttressed the plausibility of its claim in Count IV with citations to caselaw, the court conducted its own research and found no indication that the SBA advance notice provision in plaintiff's contract has ever supported a successful CDA claim. Further, the court does not consider that this contract provision guarantees any rights of a small business performing under an 8(a) contract. The introduction to the contract clause containing the notice provision addresses the commitments and contracting rights of the SBA. *See* Compl. Ex. 6 at 13 (noting that the SBA "agrees to the following" terms of the contract). The particular provision relied upon by plaintiff is found in a description of the apportionment of contract administration duties between the agency and the SBA. *Id.* at 14.

The court finds no indication in the advance notice provision cited by plaintiff that this provision establishes rights for E&E which would support a CDA claim. The general rule is that an alleged violation of a FAR provision which provides only incidental benefits to a contractor cannot support a CDA claim before this court. *See, e.g.*, *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000) ("In order for a private contractor to bring suit against the Government for violation of a regulation, that regulation must exist for the benefit of the private contractor." (citing *Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1451 (Fed. Cir. 1997); *Rough Diamond Co. v. United States*, 351 F.2d 636, 640-42 (Ct. Cl. 1965))). Here, the advance notice provision appears to exist for the benefit of the SBA and its contract administration function, not for E&E.

The court must also agree with defendant that there is no "plausible causal link" between the agency's six-hour delay in notifying the SBA and plaintiff's damages in the amount of $3,296,543.18. Def.'s Mot. at 23. The court notes, as well, that the agency had already ordered the minimum amount of services required by the contract, rendering any intervention by the SBA unlikely, at best. For all of these reasons, the court finds the claim in Count IV to lack plausibility so as to merit dismissal under RCFC 12(b)(6).[16] *Iqbal*, 556 U.S. at 678.

---

[16] The general allegation of a pattern of bad faith conduct found throughout the complaint and particularly in Count II may be argued by plaintiff to include some "added fuel to the fire" such as the fact that the agency failed to provide advance notice of termination to the SBA. Tr. at 46. This does not mean, however, that the agency's failure to observe this contract requirement, by itself, gives rise to a claim for monetary damages.

31

## C.    Defendant's Request for an Amended Complaint

Defendant's motion includes a request that plaintiff clarify, through the filing of an amended complaint, the damages requested for any counts in the complaint not dismissed by this court.  Def.'s Mot. at 1-2, 24-25; Def.'s Reply at 9; Tr. at 4-5, 20, 59.  In plaintiff's opposition brief, E&E's stated position is that the complaint is not required to be any more specific as to the nature of the damages requested.  Pl.'s Opp. at 12, 20.  At oral argument, plaintiff's position was more nuanced.  Plaintiff's counsel assured the court that the damages set forth in the complaint were specific enough, but expressed some willingness to add specificity if required by the court.  Tr. at 34-36.

The court notes that this opinion has dismissed two counts of the complaint and has also examined the plausibility of the remaining claims before the court. These rulings have considerably narrowed the focus of the disputed claims in this suit.  Due to these changed circumstances, in the court's view the best course of action at this point is to deny as moot defendant's request that the court order plaintiff to file an amended complaint.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that:

(1)    Defendant's Motion to Dismiss, filed July 28, 2014, is **DENIED** in part as to

    (a)    Dismissal of **Counts I** and **II** of the complaint under either RCFC 12(b)(1) or RCFC 12(b)(6);

    (b)    Defendant's request that plaintiff file an amended complaint; and

    **GRANTED** in part as to

    (c)    **Count III** of the complaint, which is **DISMISSED** without prejudice for lack of subject matter jurisdiction;

32

    (d)    **Count IV** of the complaint, which is **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted; and

(2)    On or before **March 23, 2015**, defendant shall **FILE** its **Answer** or other response to Counts I and II of the complaint.

/s/Lynn J. Bush           
LYNN J. BUSH
Senior Judge